UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER E. DEUTSCH,                                    :

        Plaintiff/Petitioner, and       :       Case No. 13 CV 4571 (RPP)

RECEIVER ROBERT SEIDEN,                              :

        Plaintiff/Petitioner,           :

  -against-                                         :

ZST DIGITAL NETWORKS, INC.,                          :

        Defendant/Respondent,           :

  -and-                                             :

DUANE MORRIS LLP,                                    :

        Garnishee.                      :
------------------------------------------------------------x


## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE PETITION


DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Duane Morris LLP Pro Se
and Attorneys for Defendant/Respondent

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES………………………………………………………… | ii |
| Preliminary Statement…………………………………………………………….. | 1 |
| PETITIONERS' VERSION OF THE FACTS…………………………………….. | 2 |
| ARGUMENT - PETITIONERS HAVE FAILED TO SHOW THAT THE PETITION IS RIPE ORT HAT IT STATES A VIABLE CLAIM………………………………………………………… | 5 |
|     A.    The Absence of an Entered Judgment Renders the Petition Premature…………………………………………………… | 5 |
|     B.    Petitioners Have Established No Basis for the Relief They Seek…. | 8 |
| CONCLUSION……………………………………………………………………. | 10 |

TABLE OF AUTHORITIES

Cases

Cooper v. Town of E. Hampton,
 83 F.3d 31 (2d Cir. 1996)..................................................................................................6

Magnet Litho Supply Corp. v. Broad St. LLC
 2003 WL 21497354 (N.Y. Sup. App. Term May 21, 2003).........................................8

Musso v. Ostashko,
 468 F.3d 99 (2d Cir. 2006)...............................................................................................7

RCA Corp. v. Tucker,
 696 F. Supp. 845 (E.D.N.Y. 1988) ..................................................................................7

U.S. v. Indrelunas,
 411 U.S. 216, 93 S. Ct. 1562 (1973)............................................................................6,7

Rules

Fed. R. Civ. P. 58..........................................................................................................1, 5

Fed. R. Civ. P. 79(a) .....................................................................................................1, 6

Other Authorities

New York State Bar Association Committee on Professional Ethics, Opinion 570 (1985).............9

Preliminary Statement

Unwilling to concede that this turnover proceeding is premature because it was filed before judgment was entered, Petitioners[1] ask the Court to help them rewrite history. Thus, they propose that the Court now sign an order stating that judgment was entered on May 30, 2013 even though the docket sheet shows that no judgment was actually entered then. Entry of judgment is not some empty formality that litigants can pretend took place. It is an act required by Fed. R. Civ. P. 58 and occurs only "when the judgment is entered in the civil docket under Rule 79(a)." That has not occurred here. Since the law provides that a judgment cannot be enforced before it is entered, this turnover proceeding should be dismissed on the ground that it was commenced prior to entry of judgment.

Even if the Court could do what Petitioners suggest – enter an order stating that judgment was entered on May 30 when the docket sheet plainly shows otherwise – Petitioners' position would be no better. The only payment that the Petition alleges Duane Morris received was made on May 14, 2013, and that payment came from a Hong Kong law firm (King & Wood Mallesons) rather than from ZST. There is no legal theory that would allow Petitioners to seek the turnover of retainer funds which were paid to Duane Morris by someone other than the judgment debtor two weeks <u>before</u> the date of Petitioners' phantom May 30 judgment, and Petitioners offer none.

Because Petitioners know they cannot point to a judgment entered by this Court, their opposition papers instead dwell on a March 28, 2013 Delaware Chancery Court order appointing Seiden as receiver (the "Receiver Appointment Order"). Petitioners do not purport to have asked this Court to domesticate the Receiver Appointment Order, nor was it even annexed to the papers

---

[1] Defined terms have the same meaning in this reply as in Duane Morris' original memorandum.

submitted in support of their motion for summary judgment in lieu of complaint. To the extent that Petitioners now contend that the payment to Duane Morris ran afoul of the Receiver Appointment Order, they are wrong. The Receiver Appointment Order in no way prohibited Duane Morris from accepting a payment from King & Wood Mallesons. Indeed, it did not actually prohibit ZST from making payments. In any event, the Receiver Appointment Order is not a judgment of this Court. Accordingly, this Court's ancillary jurisdiction to enforce its own judgments does not extend to the Delaware Chancery Court's Receiver Appointment Order, and the Petition should be dismissed.

## PETITIONERS' VERSION OF THE FACTS

In their opposition papers, Petitioners do not dispute any of the following facts:

1)    Duane Morris received a $25,000 "advance fee retainer" on May 14, 2013;

2)    Under the terms of its engagement letter with ZST, Duane Morris had a right to apply the advance fee retainer to the payment of legal fees and expenses ZST owed, and Duane Morris did so;

3)    The $25,000 advance fee retainer was wired to Duane Morris by King & Wood Mallesons;

4)    Duane Morris has received no payment from ZST;

5)    Petitioners asked this Court to enter a judgment in the amount of $32,277,368.70 even though Deutsch only exercised his "put" for 3,931,370 shares of ZST which, at $8.21 per share, would come to $32,276,547.70;

6)    There is no Delaware money judgment for $32,277,368.70 or any other amount;

7)    The document identified in the Petition as the "Judgment" entered by this Court on May 30, 2013 is not a judgment, and is instead an order restraining ZST and others "from

altering, modifying, deleting, misappropriating, transferring, converting, or in any manner destroying any and all documents, books, or records . . . related to defendant ZST. . . ." (Graff Aff. Ex. 14); and

8)   No judgment against ZST for $32,277,368.70 has ever been entered by this Court. (See Parks Ex. B).

The key facts are thus undisputed. To the extent that Petitioners contest any other facts, their position is demonstrably baseless. For example, they declare that judgment was entered by this Court on May 30, 2013 and that Duane Morris' argument to the contrary is "disingenuous." (Petitioners' Memorandum of Law in Support of Opposition to Duane Morris's Motion to Dismiss, "Pets. Opp.," p. 3.) But it is evident from the docket sheet that no judgment was entered against ZST on May 30 or at any time since then. (Parks Ex. B.) Even now, Petitioners have not asked the Court to enter judgment. Instead, they want it to sign an order saying that judgment was entered on a date when it was not, in fact, entered. (See Declaration of David Graff, dated August 5, 2013, "Graff Opp. Decl.," Ex. 1.)

Petitioners also tell the Court that King & Wood Mallesons "has transferred *at least* $25,000 of ZSTN [a]ssets to Duane Morris." (Pets. Opp.," p. 4; emphasis in original.) They had previously alleged that Duane Morris received the $25,000 payment directly from ZST. (See Petition ¶ 26.) Both assertions were made without any good faith basis and, not surprisingly, they are wrong. ZST has paid Duane Morris nothing. As the wire transfer annexed to Duane Morris' moving papers shows, the retainer payment was made by King & Wood Mallesons – and ZST was not the source of that payment. Rather, two individuals with a significant interest in ZST have chosen to finance ZST's defense with their own funds. (See Declaration of Barbara Chiu, dated August 15, 2013, "Chiu Decl. ¶ 4.) While Petitioners – who obtained extraordinary

relief against ZST in Delaware Chancery Court on default – might prefer to keep ZST from having legal representation, they cannot stop private parties from advancing the funds ZST needs to pay its counsel.

Even if the advance fee retainer had come from ZST, Petitioners could not complain. Their argument to the contrary is based on a completely unfounded interpretation of the Receiver Appointment Order, which they suggest bars ZST from paying anyone other than Seiden. That is not what the Receiver Appointment Order says. (See Graf. Opp. Decl. Ex. 6 ¶ 5.) The order nowhere prohibits ZST from paying counsel or other creditors in the ordinary course of business. Although it provides that payment of Seiden's fees and expenses have priority over other obligations, it requires Seiden to obtain court approval of such expenses and only entitles him to payment of such expenses which have been "approved by the Court." (Ibid.) As of May 14, 2013, when King & Wood Mallesons wired the advance fee retainer to Duane Morris, Duane Morris could not have been aware of any orders approving Seiden's fees and expenses because the very first time one of his fee requests was approved was after May 14, 2013. (Parks Reply Decl. Ex. E.)

Not content to have sued one set of ZST lawyers, Petitioners have now filed a proceeding against King & Wood Mallesons as well. Petitioners' goal thus seems to be to come between ZST (a company having all of its management and operations in the People's Republic of China) and the attorneys who were retained to help it deal with an unfamiliar legal system that it does not understand. Turnover proceedings are not supposed to be used as a strategic device to interfere with a judgment debtor's ability to be represented by counsel. Worse yet, as we explain below, Petitioners have pursued this dubious goal by suing ZST's counsel without having any

factual or legal basis for doing so.[2] The Petition does not state a viable claim and should be dismissed.

## ARGUMENT

## PETITIONERS HAVE FAILED TO SHOW THAT THE PETITION IS RIPE OR THAT IT STATES A VIABLE CLAIM

A.  <u>The Absence of an Entered Judgment Renders the Petition Premature</u>

Petitioners' claim that the Court can exercise ancillary jurisdiction here is based on a reality-defying premise – that "[j]udgment was domesticated and entered in New York on May 30, 2013." (Pets. Opp. p. 6.)  In fact, as is clear from the docket sheet in <u>Deutsch</u> v. <u>ZST Digital Networks, Inc.</u>, 13 CV 2533, the action Petitioners filed to domesticate the Delaware Chancery Court "judgment," no judgment was entered in New York on May 30, 2013.  (Parks Ex. B.)  Entry of judgment is not a metaphysical act that can happen without leaving a tangible record.  On the contrary, Fed. R. Civ. P. 58 – entitled "Entering Judgment" – provides:

> (a)  Separate Document.  Every judgment and amended judgment must be set out in a separate document . . .
>
>     \*   \*   \*
>
> (c)  Time of Entry.  For purposes of these rules, judgment entered at the following times:
>
> > (1)  if a separate document is not required, <u>when the judgment is entered in the civil docket under Rule 79(a)</u>; or
> >
> > (2)  if a separate document is required, <u>when the judgment is entered in the civil docket under Rule 79(a)</u> and the earlier of these events occurs:
> >
> > > (a)  it is set out in a separate document; or

---

[2]   The Court may wish to convert this motion from a motion to dismiss to a motion for summary judgment since some of the documents on which it is based are not incorporated in the pleadings.

    (b) 150 days have run from the entry in the civil docket.

  (d) Request for Entry. A party may request that judgment be set out in a separate document as required by Rule 58(a).

(Emphasis added.)

Rule 79(a) of the Federal Rules of Civil Procedure, in turn, provides:

  (a) Civil Docket.

    (1) In General. The clerk must keep a record known as the "civil docket" in the form and manner prescribed by the Director of the Administrative Office of the United States Courts with the approval of the Judicial Conference of the United States. The clerk must enter each civil action in the docket. Actions must be assigned consecutive file numbers, which must be noted in the docket where the first entry of the action is made.

    (2) Items to be Entered. The following items must be marked with the file number and entered chronologically in the docket:

      (A) Papers filed with the clerk;

      (B) Process issued, and proofs of service or other returns showing execution; and

      (C) Appearances, orders, verdicts, and judgments.

No judgment within the meaning of Rules 58 and 79 has been filed against ZST in this Court. A decision is not a judgment, nor is an oral ruling. As the Second Circuit explained in Cooper v. Town of E. Hampton, 83 F.3d 31, 34 (2d Cir. 1996), "In considering whether a document constitutes a Rule 58 judgment, . . . we have consistently required that such a document must be 'separate from any judicial memorandum or opinion' and 'must be labeled a judgment.'" (Citation omitted). The Second Circuit added, "these Mechanistic Requirements, while seemingly trivial, are necessary to the goal of promoting clarity." Ibid. Accord U.S. v. Indrelunas, 411 U.S. 216, 220, 93 S. Ct. 1562, 1564 (1973) (to eliminate the "considerable

uncertainty over what actions of the District Court would constitute an entry of judgment, and occasional grief to litigants as a result of this uncertainty," "<u>Rule 58 was amended to require that a judgment was to be effective only when set forth on a separate document</u>") (emphasis added).[3]

While the date on which a judgment is entered determines when a party's time to appeal begins to run, that is not the only thing measured from entry of judgment. As we pointed out in our moving papers, the Second Circuit held in <u>Musso</u> v. <u>Ostashko</u>, 468 F.3d 99, 106 (2d Cir. 2006) – a case Petitioners do not discuss, "in New York, a judgment cannot be enforced prior to entry . . . . 'The granting of a judgment by a court is of no value to the judgment creditor until the judgment is entered. Entry of judgment is the first step toward enforcement of that judgment under the CPLR.'" (citations omitted).

The record makes clear that no separate document labeled "Judgment" has been entered on the docket in the action Petitioners filed against ZST in April. Since it is undisputed that a judgment cannot be enforced prior to entry – and that has not occurred – this proceeding should be dismissed as premature.

The absence of a judgment disposes of Petitioners' argument that the Court has ancillary jurisdiction to enforce its own judgment. As Petitioners' own authorities establish, in order for a court to exercise ancillary jurisdiction to enforce a judgment, a judgment has to have been entered. <u>RCA Corp.</u> v. <u>Tucker</u>, 696 F. Supp. 845, 850 (E.D.N.Y. 1988) ("a federal court maintains ancillary jurisdiction to enforce its own judgments"). In this case, the Court cannot

---

[3] The existence of an order in another proceeding referring to entry of a judgment which was not actually entered on the docket does not constitute proof that judgment was entered. Accordingly, Petitioners' reliance on the order they apparently drafted in the turnover proceeding they brought against HSBC Bank (Graff Opp. Decl. Ex. 2) – which was entered on default – is of no help to them.

exercise ancillary jurisdiction to enforce its own judgment because no judgment exists which can be enforced.

B.      Petitioners Have Established No Basis for the Relief They Seek

Petitioners' next argument also flies in the face of the facts. They contend that Duane Morris' receipt of the advance fee retainer violated the Receiver Appointment Order and that, by defending its right to the advance fee retainer, Duane Morris has somehow tried to launch a collateral attack on the Receiver Appointment Order. While Petitioners are mistaken in both respects, their discussion of the Receiver Appointment Order is irrelevant here. This Court did not issue the Receiver Appointment Order and Petitioners cite no authority holding that a federal district court has ancillary jurisdiction to enforce state court orders that they were never even asked to domesticate.

In discussing the Receiver Appointment Order, Petitioners gloss over the inconvenient fact that Duane Morris has never received any payment from ZST. Duane Morris produced documentary evidence in the form of a wire transfer establishing that the advance fee retainer came from King & Wood Mallesons – and not from ZST. Where the "garnishee" is not in possession of funds belonging to the judgment debtor, a turnover proceeding cannot be maintained against the "garnishee." Magnet Litho Supply Corp. v. Broad St. LLC, 2003 WL 21497354, *1 (N.Y. Sup. App. Term May 21, 2003) (because "the documentary evidence establishes that the funds deposited as security were not paid by the judgment debtor," court found that "the petitioner's allegations in the petition concerning the transfer at issue were insufficient to sustain the turnover proceeding").

Moreover, by its terms, the Receiver Appointment Order did not prohibit King & Wood Mallesons from wiring funds to Duane Morris, nor could it have done so since neither Duane

Morris nor King & Wood Mallesons was a party to the proceeding Deutsch brought against ZST in Delaware Chancery Court. Moreover, the funds that King & Wood Mallesons wired did not come from ZST. Rather, other evidence shows that the funds were supplied to King & Wood Mallesons by its clients, two individuals with a stake in ZST who have chosen to finance its defense. (Chiu Decl. ¶ 4.) The Receiver Appointment Order does not prohibit third parties from advancing funds needed to retain counsel so that ZST can present a defense.

Moreover, the Receiver Appointment Order cannot rationally be construed the way Petitioners construe it – to prohibit ZST from paying anyone while the Receiver is in place. First of all, the Receiver Appointment Order provides no such thing. Beyond that, the Receiver is entitled to payment only when the Delaware Chancery Court issues an order to that effect, and the first time it did so was <u>after</u> the advance fee retainer was wired to Duane Morris on May 14, 2013. (<u>See</u> Parks Reply Exs. E, F.) Thus, even if ZST had been the source of the funds that King & Wood Mallesons wired to Duane Morris on May 14, it would not have been improper because Seiden was entitled to no payment at that time and neither Duane Morris nor King & Wood Mallesons would have had reason to believe that he was.

With respect to the law applicable to advance fee retainers, Petitioners have nothing to say. While they make a blanket assertion that the cases Duane Morris cited in its main memorandum are "inapplicable" (Pets. Opp. p. 8), they do not elaborate, nor do they cite any contrary authority. They simply note that Duane Morris' cases all involve bankruptcy proceedings. That does not make them inapplicable. Each of the cases was decided on the basis of the general rule, which was articulated by the New York State Bar Association Committee on Professional Ethics, Opinion 570 (1985), that "advance payment of legal fees need not be considered client funds and need not be deposited in a client trust account."

The engagement letter between Duane Morris and ZST expressly provides that the retainer is an advance fee retainer. As such, as a matter of law, it became the property of Duane Morris upon receipt on May 14, 2013 – two weeks before Petitioners mistakenly claim judgment was entered against ZST in this Court. In order to come up with an argument that the engagement letter "admits that Duane Morris holds an account that contains ZSTN funds" (Pets. Opp. p. 5), Petitioners are reduced to sematic gamesmanship. They take the engagement letter's language authorizing Duane Morris to apply the advance fee retainer to "payment of ZST's account for fees owed . . ." and try to twist the reference to "ZST's account" to mean an account containing ZST funds. But, as the context makes clear, the term "ZST's account" means the <u>account receivable</u> owed by ZST to Duane Morris. The engagement letter thus authorizes Duane Morris to apply the advance fee retainer against the fees and expenses owed by ZST. Duane Morris has done so. In any case, as previously noted, Duane Morris received no funds from ZST and is holding no property belonging to ZST. Accordingly, the petition should be dismissed.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Duane Morris' motion to dismiss the petition should be granted in all respects.

Dated: New York, New York
       August 15, 2013

DUANE MORRIS LLP

By: *Fran M. Jacobs*
    Fran M. Jacobs
    Kevin Potere
1540 Broadway
New York, NY  10036
(212) 692-1000
Attorneys for Duane Morris LLP Pro Se
and Attorneys for Defendant/Respondent